**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 1, 2022
Date Decided: April 19, 2022

J.G. and C.A.G.

Adam C. Gerber, Esq.
WOLFE & ASSOCIATES LLC
506 N. DuPont Hwy, Suite 2
Dover, DE 19901

RE: *In the Matter of J.D.G., a Person with a Disability*
     C.M. No. 19122-N-SEM

Dear Litigants:

This matter is before me on the Petitioners' exceptions (the "Exceptions") to the Master's Interim Order Granting Visitation, dated November 19, 2021 (the "Interim Order").[1]

At heart, this case addresses the guardianship of J.D.G.[2] J.D.G. currently has four co-guardians: J.G., C.A.G. (with J.G., "Petitioners"), C.S.G., J.D.G.'s mother,

---

[1] *See generally* Interim Order Granting Visitation, Dkt. No. 89 [hereinafter "Interim Order"].
[2] Given the commonality in last names, this Letter Opinion refers to J.D.G. by first name. No disrespect is intended.

and M.S., J.D.G.'s grandmother.[3]  The Interim Order nestles within another pending filing in this action: the Petition to Remove a Co-Guardian, filed June 4, 2021 (the "Petition to Remove"), by the Petitioners.[4]  The Petition to Remove seeks to remove C.S.G. and M.S. as co-guardians of the person and property of J.D.G.[5]  The Master has since stayed the Petition to Remove until the conclusion of related criminal proceedings pertaining to C.S.G.[6]  The stay ruling held that the Petitioners should continue to allow J.D.G. and M.S. to communicate, as recommended by J.D.G.'s counselor.[7]

After the Master stayed the Petition to Remove, the parties ran into certain visitation issues, and visitation between J.D.G. and M.S. was terminated by the Petitioners in September 2021.[8]  The Master held a hearing to address visitation, in October 2021 (the "October 2021 hearing"), at which time J.D.G.'s counselor, J.K., testified.[9]  J.K. testified in favor of the phone calls between J.D.G. and M.S. continuing.[10]  Following the October 2021 hearing, the Master spoke with J.D.G.

---

[3] *See* Emergency Pet. to Remove C.S.G. & M.S. as Co-Guardians of the Person & Property 1, ¶ 1, Dkt. No. 30 (identifying C.S.G. as "Respondent" and "mom"; identifying J.D.G. as M.S.'s grandson) [hereinafter "Pet. to Remove a Co-Guardian"].
[4] *See* Interim Order 1.
[5] *See generally* Pet. to Remove a Co-Guardian.
[6] *See* Order Staying Pet., Dkt. No. 57.
[7] *See id.* ¶ 3.
[8] *See* Interim Order 2.
[9] *See, e.g.*, Resp't M.S.'s Answering Br. Opposing Pet'rs.' Exceptions to the Master's Final Report 3, Dkt. No. 99 [hereinafter "AB"]; Interim Order 2.
[10] AB 3.

himself over Zoom,[11] at which time J.D.G. indicated that he missed M.S.[12] This is consistent with statements made by J.K. at the October 2021 hearing.[13] The Master also reviewed five recorded phone calls between J.D.G. and M.S.[14]

The Exceptions appear to request a different outcome with respect to the Interim Order, to wit, that the phone conversations between J.D.G. and M.S. be limited to fifteen-minute calls on Tuesdays and Fridays, within a half-hour time block, and a fifteen-minute video call on Sundays within a half-hour time block.[15] Briefing clarifies a couple of the Petitioners' additional points: first, they believe the Master did not fully appreciate the "emotional and psychological damage" that M.S., in their view, has inflicted upon J.D.G.;[16] the Petitioners believe the Master did not fully apprehend the numerosity and severity of M.S.'s "lapses of judgment" when speaking to J.D.G.;[17] the Petitioners believe that the Master did not address instances where, in their view, M.S. has made misrepresentations to the Court;[18] the Petitioners believe that affording J.D.G. privacy to interact with M.S. could be detrimental, and therefore the Master erred in holding that the calls should be conducted with

---

[11] *See, e.g.*, Pets.' Reply Br. to Resp't's Answering Br. Opposing Pet'rs.' Exceptions to the Master's Final Report 8, Dkt. No. 101 [hereinafter "RB"].
[12] AB 3.
[13] *Id.*
[14] RB 5.
[15] Notice of Exception to Interim Order Granting Visitation, Dkt. No. 90.
[16] Opening Br. Regarding Interim Order Granting Visitation 5, Dkt. No. 96 [hereinafter "OB"].
[17] Interim Order 3; OB 6.
[18] OB 7–9.

privacy;[19] and finally, the Petitioners ask the Court to reconsider its position regarding disputes stemming from the Interim Order.[20]

I respond, briefly, to each of these points here. With respect to the purported emotional and psychological damage stemming from contact between J.D.G. and M.S., the Master relied upon the recommendations of J.D.G.'s counselor, a neutral witness in the action.[21] There is no reason apparent from the record before me to dislodge this reliance, and I note that the Petitioners appear to rely on the counselor's judgment in other matters.[22]

Second, the Master's review of recordings and individual conversation with J.D.G. are, to my mind, reflective of an extensive effort to review the evidence before her.[23] The Petitioners had the ability to choose which of the recordings to play before the Master at the October 2021 hearing. I assume the recording they chose was an exemplar of their concerns; beyond this, the Master listened to four additional recordings. The Petitioners' concern that the Master did not grasp the frequency of

[19] Interim Order ¶ 4(b); OB 6–7, 9.

[20] OB 9–10. This is not an exhaustive list of the Petitioners' arguments in favor of the Exceptions, but the other arguments (such as the burden placed upon Petitioners to record each phone call) do not seem to address the question of J.D.G.'s best interest. As such, I have not addressed them in detail.

[21] Interim Order 1, 2.

[22] *See, e.g.*, OB 9 ("As confirmed by J.D.G.'s counselor[,] . . . . The visitation parameters set forth by J.D.G.'s counselor . . . ").

[23] I note that the transcript of the Master's interview with J.D.G. reflects a both high level of concern by the Master for the ward's best interest, and also a level of sympathy and compassion that, in my view, together reflect very well on this Court. *See generally* Tr. From Meeting Between Master Molina & J.D.G. on Nov. 4, 2021, Dkt. No. 95.

4

M.S.'s troubling conduct is more indicative to me of a disagreement with the Master's findings rather than any failure of the Master's review.

Third, the Petitioners suggest that the Interim Order does not "exact any chastisement or consequences" against M.S. for her alleged behavior.[24] While this position might be sympathetic, it is not pertinent to the question of whether communication with M.S. is best *for J.D.G.*, which is the issue here.

Fourth, the Petitioners raise the question of whether J.D.G. and M.S. should be allowed to take their calls privately, suggesting that J.D.G. "often" follows non-verbal cues from the Petitioners when interacting with M.S.[25] The confusion J.D.G. suffers when taking phone calls with M.S. and receiving non-verbal cues from Petitioners can, per the Petitioners, lead to disruptive behavior and duress.[26] To the extent the Petitioners are concerned about the contents of conversations, they will be able to review the pertinent recordings and engage in the dispute resolution process with M.S. as needed.

Finally, the Petitioners ask the Court to revisit its position regarding disputes where the parties fail to comply with the Interim Order. But the Petitioners do not put forward any alternative dispute resolution process. The Master's dispute process

---

[24] OB 8.
[25] *Id.* at 7.
[26] *See id.* at 8.

outlined in the Interim Order encourages the parties to work in good faith to reach resolutions that benefit all involved.[27]

Ultimately, the Petitioners ask the Court to find that the Interim Order is not in J.D.G.'s best interests, and to vacate the Interim Order. I cannot agree with their position. The Interim Order and the portion of the Petition to Remove dealing with visitation both cite the recommendation of J.D.G.'s counselor in favor of communication with M.S. The counselor's recommendation is most persuasive to me given her status as a neutral witness in the case. I note also that at this time, the Exceptions have been taken to an Interim Order that is just that—*interim* pending the resolution of the Petition to Remove.

Having reviewed the record before me *de novo* in accordance with the standard identified in *DiGiacobbe v. Sestak*,[28] I see no reason to deviate from the Master's well-reasoned Interim Order. I therefore adopt the Interim Order in full.

---

[27] *See* Interim Order ¶ 5.
[28] 743 A.2d 180, 184 (Del. 1999). This review included the Interim Order, the Petition to Remove, the Notice of Exceptions, the parties' briefing associated with the Exceptions, the transcript of the Master's Zoom call with J.D.G., and the judicial action form associated with the October 2021 hearing, which included summarized testimony from the hearing.

Accordingly, the Petitioners' Exceptions are DENIED. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Vice Chancellor